UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**TRENK ISABEL P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2350
Livingston, New Jersey 07039
Telephone:  (973) 533-1000
Email:  rtrenk@trenkisabel.law
Email:  rroglieri@trenkisabel.law

*Counsel to Dean R. Mon,*
*Chapter 11 Debtor and Debtor-in-Possession*

**Order Filed on February 4, 2022
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

In re:

DEAN R. MON,

                    Debtor.

Chapter 11
(Small Business Subchapter V)

Case No. 21-14511 (KCF)

Hearing Date and Time:
December 15, 2021 at 2:00 p.m.

## ORDER CONFIRMING DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION

The relief set forth on the following pages, numbered two (2) through eight (8), is hereby

**ORDERED**.

**DATED: February 4, 2022**

Honorable Kathryn C. Ferguson
United States Bankruptcy Judge

(Page 2)

| | |
|---|---|
| Debtor: | Dean R. Mon |
| Case No. | 21-14511 (KCF) |
| Caption of Order: | Order Confirming Debtor's Second Amended Subchapter V Plan of Reorganization |

---

Dean R. Mon, Chapter 11 debtor and debtor-in-possession (the "Debtor"), by and through his attorneys, Trenk Isabel P.C., having filed with the Court a *Second Amended Small Business Debtor's Plan of Reorganization* (the "Plan") under chapter 11 of Title 11, United States Code (the "Bankruptcy Code") [ECF 185]; and it appearing that due notice of the hearing to consider confirmation of the Plan (the "Confirmation Hearing") having been given; and the solicitation of acceptances or rejections of the Plan having made in the manner required by this Court and by law; and a Confirmation Hearing having been held before the Court on December 15, 2021; and upon the entire record of this case, the argument of counsel for the Debtor, and the evidence proffered at the Confirmation Hearing, including the Certification of Dean R. Mon in support of confirmation of the Plan [ECF 204]; and the Certification of Richard D. Trenk, Esq. on the tabulation of the ballots cast in favor of and against the Plan (the "Certification of Ballots") [ECF 205]; and the Court having considered the objections raised by Bighorn Investment Group LTD and Lance Maiss [ECF 200], WLL 175 West No.1 LLC and 175 West No. 2 LLC [ECF 201], and Peyton Advisory Services, Inc. Defined Benefits Plan [ECF 202] (collectively, the "Objections"); and the Court having considered the supporting papers filed by the Subchapter V Trustee [ECF 206]; and, unless otherwise stated, all capitalized terms used herein having the meaning set forth in the Plan; and the Court having entered a Letter Decision on the docket dated January 13, 2022 [ECF 221]; and after due deliberation and good and sufficient cause appearing thereof;

**IT IS HEREBY FOUND, THAT:**

A.    The Plan attached hereto as **Exhibit A**, as modified by this Confirmation Order, complies with all applicable provisions of the Bankruptcy Code.

(Page 3)

| | |
|---|---|
| Debtor: | Dean R. Mon |
| Case No. | 21-14511 (KCF) |
| Caption of Order: | Order Confirming Debtor's Second Amended Subchapter V Plan of Reorganization |

---

B.    The Plan has been proposed in good faith and not by any means forbidden by law.

C.    The Debtor has disclosed to the Court any payments made or promised for services or for costs and expenses in connection with this case or the Plan, and such payments have been approved by, or are subject to the approval of, the Court as reasonable.

D.    No government regulatory commission has jurisdiction over any rates charged by the Debtor.

E.    All Allowed Administrative claims and Non-Tax Priority claims will be paid in full on the Effective Date of the Plan, or as otherwise agreed to by the parties.  With regard to the aforementioned which will be paid after the Effective Date, it is with the consent of all affected parties.

F.    Class 1, Class 2, Class 3, and Class 4 are impaired under the Plan. As reflected in the filed Certification of Ballots, Class 1, Class 2 and Class 4 creditors have voted to reject the Plan and Class 3 Creditors have voted to accept the Plan.

G.    The Plan is feasible. The Debtor will be able and has sufficiently demonstrated its ability to meet its financial obligations under the Plan. Confirmation and consummation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor.

H.    The Debtor has no retiree benefits as that term is defined in section 1114 of the Bankruptcy Code.

I.    Bankruptcy Code sections 1129(a)(14) and 1129(a)(15) are not applicable to this case.

(Page 4)

| | |
|---|---|
| Debtor: | Dean R. Mon |
| Case No. | 21-14511 (KCF) |
| Caption of Order: | Order Confirming Debtor's Second Amended Subchapter V Plan of Reorganization |

---

J.      To the extent applicable, all transfers of property under the Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

K.      The Plan meets all the applicable requirements of sections 1129(a), 1129(b) and 1191(b) of the Bankruptcy Code.

L.      The classification of claims and interests under the Plan is consistent with section 1122 of the Bankruptcy Code.

M.      The Plan specifies the classes of claims and interests impaired under the Plan and specifies the treatment of claims or interests in such classes.

N.      The Plan provides the same treatment for each claim or interest of a particular class.

O.      With respect to each impaired class of claims under the Plan, such impaired class will receive under the Plan an amount that is not less than such holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

P.      The Plan provides adequate means for its execution and implementation.

Q.      The procedures by which the Ballots were distributed and tabulated were fair, properly conducted, and complied with the prior Orders of this Court.

R.      The service of notice of the Confirmation Hearing and the solicitation of acceptances and rejections of the Plan were appropriate and satisfactory and were in compliance with the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

Based upon the above findings of fact; and good and sufficient cause appearing therefor,

(Page 5)

| | |
|---|---|
| Debtor: | Dean R. Mon |
| Case No. | 21-14511 (KCF) |
| Caption of Order: | Order Confirming Debtor's Second Amended Subchapter V Plan of Reorganization |

### IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.      The Plan [ECF 185] filed by the Debtor and annexed hereto as **Exhibit A,** and as amended and modified herein, be and hereby is confirmed in accordance with, among other sections, the applicable provisions of sections 1129(a), 1129(b) and 1191(b) of the Bankruptcy Code; *provided, however,* to the extent there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  The terms of the Plan are an integral part of this Confirmation Order and hereby are incorporated herein by reference and "So Ordered" in their entirety.

2.      To the extent any objections to the Plan were not withdrawn, all objections, whether raised formally or informally, and specifically including the Objections, are overruled.

3.      The treatment of Claims and interests as provided in the Plan is approved.

4.      Immediately upon the entry of the Confirmation Order, the Plan and this Confirmation Order shall be binding upon and inure to the benefit of the Debtor, any heirs, executors, administrators, successors and assigns thereof, and all holders of Claims or interests, and their respective successors and assigns, whether or not they voted to accept the Plan.

5.      Failure specifically to include or reference particular sections or provisions of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Bankruptcy Court that the Plan be confirmed and such provisions and related agreements be approved in their entirety.

6.      This Order shall not be subject to a stay pursuant to Bankruptcy Rule 3020(e).

(Page 6)

| | |
|---|---|
| Debtor: | Dean R. Mon |
| Case No. | 21-14511 (KCF) |
| Caption of Order: | Order Confirming Debtor's Second Amended Subchapter V Plan of Reorganization |

7.      The Court shall retain exclusive jurisdiction over this reorganization case, including exclusive jurisdiction over all controversies, disputes, and suits which may arise in connection with the interpretation or enforcement of the Plan and this Confirmation Order or in connection with the enforcement of remedies under the Plan and this Confirmation Order.

8.      Except for any nondischaregability and other claims brought through Adv. Pro. No. 21-01337 (KCF) and Adv. Pro. No. 21-01360 (KCF) ("175 West Litigation"), the discharge provision contained in the Plan is deemed incorporated herein by reference, as if set forth herein in full, and is approved in all respects and shall be effective as provided for in the Plan and sections 1191(b) and 1192 of the Bankruptcy Code.

9.      Notwithstanding anything to the contrary in the Plan, pursuant to section 1194(b) of the Bankruptcy Code, the Subchapter V Trustee shall be the Disbursing Agent under the Plan.

10.      The Debtor's Plan payments are to be disbursed by the Subchapter V Trustee pursuant to the Plan and shall be in the amount of $2,500 paid quarterly to commence three months after the Effective Date.

11.      After payment of all allowed administrative fees and expenses and all priority tax claims, all funds held in escrow by Trenk Isabel P.C. on behalf of the Debtor and any remaining funds in the existing debtor-in-possession account shall be turned over to the Trustee for distribution pursuant to the Plan. Further, all funds due to the Debtor from 175 West 7th Urban Renewal, L.L.C. ("175 West"), D.R. Mon Group, Inc. ("DRMG"), Liberty Park at Union City, L.L.C. ("Liberty Park"), resolution of pending adversary proceedings, resolution of avoidance claims or other recoveries against third parties shall be turned over to the Subchapter V Trustee.

(Page 7)

| | |
|---|---|
| Debtor: | Dean R. Mon |
| Case No. | 21-14511 (KCF) |
| Caption of Order: | Order Confirming Debtor's Second Amended Subchapter V Plan of Reorganization |

---

Should the Debtor resolve any of these matters, the Debtor shall instruct the payor to make the payment to Nancy Isaacson, Subchapter V Trustee.  Any disbursement by the Subchapter V Trustee shall be subject to a five (5%) percent commission to the Subchapter V Trustee pursuant to 11 U.S.C. section 330(a)(1) through application and further order of this Court.

12.     No further operating monthly reports or other financial reporting by the Debtor is required.

13.     Pursuant to 11 U.S.C. § 1186(a), property of the bankruptcy estate does not vest in the Debtor through this Order. Also, pursuant to 11 U.S.C. § 1186(a), property of the bankruptcy estate shall include post-petition property and disposable income of the Debtor.  The Debtor shall be authorized to continue to receive his monthly social security payments and meet his regular periodic expenses which shall not be subject to receipt or disbursement by the Subchapter V Trustee.

14.     The provisions of the confirmed Plan bind the reorganized Debtor, and any creditor or other party in interest, whether or not the claim or interest of such creditor or party in interest is impaired under the Plan and whether or not such creditor or party in interest has accepted the Plan.

15.     After payment of all approved administrative expenses and priority tax debt and at the conclusion of the adversary proceeding captioned *Mon v. Maiss, et al.*, Adv. Pro. No. 21-01337 (KCF), the Subchapter V Trustee shall investigate whether the payments to unsecured creditors should be increased under the Plan.

16.     With regard to D.R. Mon Group, Inc. ("DRMG"), Debtor's counsel shall serve a copy of this Order on Michael Fink, Esq.  Subject to the terms of the May 21, 2021 Order of the

(Page 8)

| | |
|---|---|
| Debtor: | Dean R. Mon |
| Case No. | 21-14511 (KCF) |
| Caption of Order: | Order Confirming Debtor's Second Amended Subchapter V Plan of Reorganization |

Superior Court, as well as the resolution of Adv. Pro. No. 21-01337 (KCF) and Adv. Pro. No. 21-01360 (KCF), to the extent any monies due to DRMG from the 175 West escrow are held in Mr. Fink's trust account, those funds shall be distributed pro rata to all DRMG creditors by Mr. Fink (after payment of any administrative fees including attorneys fees and costs).  Any distribution to DRMG's credtiors shall be subject to consent or further order of this court.  Mr. Fink shall be bound by the terms of this Order.  If DRMG files a bankruptcy proceeding, the DRMG Trustee shall instead administer any DRMG assets.

17.    Notwithstanding anything to the contrary in the Plan and this Confirmation Order WLL 175 West No.1 LLC and WLL 175 West No.2 LLC as well as the Debtor shall retain all of their rights and remedies in Adv. Pro. No. 21-01337 (KCF) and Adv. Pro. No. 21-01360 (KCF).

# EXHIBIT A

**TRENK ISABEL P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2350
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law

*Counsel to Dean R. Mon,*
*Chapter 11 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>DEAN R. MON,<br><br>              Debtor. | Chapter 11<br>(Small Business Subchapter V)<br><br>Case No. 21-14511 (KCF) |

**SECOND AMENDED SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION**

This Second Amended Plan of Reorganization (the "Plan") is presented to you to inform you of the proposed Plan for restructuring the debt of Dean R. Mon (the "Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY DECEMBER 6, 2021 AT 5:00 P.M.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY DECEMBER 6, 2021 AT 5:00 P.M. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: ROBERT S. ROGLIERI, ESQ., TRENK ISABEL P.C., 290 W. MT. PLEASANT AVENUE, SUITE 2350, LIVINGSTON, NEW JERSEY 07039.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR DECEMBER 15, 2021 AT 2:00 P.M. IN COURTROOM No. 2 AT THE CLARKSON S. FISHER US COURTHOUSE, 402 EAST STATE STREET, TRENTON, NEW JERSEY 08608.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

November 8, 2021

**TRENK ISABEL P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2350
Livingston, New Jersey 07039
Telephone:  (973) 533-1000
Email:  rtrenk@trenkisabel.law
Email:  rroglieri@trenkisabel.law

*Counsel to Dean R. Mon,*
*Chapter 11 Debtor and Debtor-in-Possession*

2

<u>**TABLE OF CONTENTS**</u>

<u>**PAGE**</u>

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ................................... 5

ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR.................... 6

1.1.   Nature of the Debtor's Business........................................................................ 6

1.2.   History of Business Operations of the Debtor .................................................. 6

1.2.1.   Mon Group and MJM .................................................................................... 6

1.2.2.   DRMG ........................................................................................................... 6

1.2.3.   175 West 7th Urban Renewal, L.L.C. ............................................................ 7

1.2.3.1.   The Property and the Sale ......................................................................... 7

1.2.3.2.   WLL/Epstein Issues .................................................................................. 8

1.2.4.   Liberty Park at Union City, L.L.C. ............................................................... 9

1.3.   Filing of the Debtor's Chapter 11 Case. ......................................................... 10

1.4.   Legal Structure and Ownership. ..................................................................... 11

1.5.   Debtor's Assets. .............................................................................................. 11

1.6.   Debtor's Liabilities. ........................................................................................ 11

1.6.1.   Secured Claims ........................................................................................... 11

1.6.2.   Priority Tax Claims ..................................................................................... 12

1.6.3.   Unsecured Claims ....................................................................................... 12

1.7.   Current and Historical Financial Conditions. ................................................ 14

1.8.   Events Leading to the Filing of the Bankruptcy Case. ................................... 14

1.9.   Significant Events During the Bankruptcy Case. ........................................... 14

1.10.   Projected Recovery of Avoidable Transfers ................................................. 15

1.11.   Remaining Contingencies ............................................................................ 17

ARTICLE 2: THE PLAN. ........................................................................................... 18

2.1.   Unclassified Claims........................................................................................ 18

A.   Administrative Expenses ................................................................................. 18

B.   Priority Tax Claims. ........................................................................................ 20

2.2.   Classes of Claims and Equity Interests. ......................................................... 21

A.   Classes of Secured Claims .............................................................................. 21

B.   Classes of Priority Unsecured Claims. ............................................................ 22

C.   Class of General Unsecured Claims ................................................................ 22

D.   Class of Equity Interest Holders. .................................................................... 24

2.3.   Estimated Number and Amount of Claims Objections. .................................. 24

3

2.4.    Treatment of Executory Contracts and Unexpired Leases. ............................................ 25

2.5.    Means for Implementation of the Plan. ......................................................................... 26

2.6.    Payments. .................................................................................................................... 26

2.7.    Post-Confirmation Management. .................................................................................. 27

2.8.    Tax Consequences of the Plan. .................................................................................... 27

2.9.    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan
27

ARTICLE 3: FEASIBILITY OF PLAN. ..................................................................................... 27

3.1.    Ability to Initially Fund Plan. ..................................................................................... 27

3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization. 28

ARTICLE 4: LIQUIDATION ANALYSIS. ................................................................................. 28

ARTICLE 5: DISCHARGE. ........................................................................................................ 28

ARTICLE 6: GENERAL PROVISIONS. .................................................................................... 29

6.1.    Title to Assets. ............................................................................................................ 29

6.2.    Binding Effect. ............................................................................................................ 29

6.3.    Severability. ................................................................................................................ 29

6.4.    Retention of Jurisdiction by the Bankruptcy Court. ..................................................... 29

6.5.    Captions. ..................................................................................................................... 30

6.6.    Modification of Plan. ................................................................................................... 30

6.7.    Final Decree. ............................................................................................................... 30

ARTICLE 7: ATTACHMENTS. .................................................................................................. 30

ARTICLE 8: FREQUENTLY ASKED QUESTIONS. ................................................................ 31

ARTICLE 9: DEFINITIONS. ...................................................................................................... 32

4876-0115-3538, v. 1

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

Dean R. Mon (the "<u>Debtor</u>") is the Debtor and Debtor-in-Possession in the instant Chapter 11 (Subchapter V) bankruptcy case.  On May 28, 2021, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 (Subchapter V) petition under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq.

Chapter 11 of the Bankruptcy Code allows the Debtor to propose a plan of reorganization. The plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. This is a reorganizing plan.

The Debtor's alleged secured claims have been challenged, as detailed below.  The Debtor's Priority Tax Claim shall be paid, in part, from the sale proceeds of two entities the Debtor had an interest in with any remaining outstanding amounts paid over five (5) years in equal quarterly installments in conformance with section 507(a)(8) of the Bankruptcy Code.  The Debtor proposes to pay Class 4 Creditors (General Unsecured Creditors) their pro rata share of $50,000 over five years in equal quarterly payments, plus, to the extent any funds remain after paying priority tax claims and administrative expenses, an additional distribution of the sale proceeds from two entities in which the Debtor had an interest and the proceeds of avoidance actions.

The Debtor believes that this Plan is in the best interest of the creditors and that the Plan is fair and equitable.  The Debtor urges that the voter **ACCEPT** the Plan.

4876-0115-3538, v. 1

# ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR.

## 1.1. Nature of the Debtor's Business.

The Debtor is in the business of providing real estate development, general contracting services, real estate services for the sales and leasing of residential projects, and property management services. The Debtor has been involved in real estate development for over thirty-five (35) years. The Debtor has constructed over 700 units consisting of duplexes, condominiums, apartments, multifamily and single-family homes, and workforce housing in Monmouth County, Bergen County, Hudson County and Somerset County.

## 1.2. History of Business Operations of the Debtor

### 1.2.1. Mon Group and MJM

In 2011, the Debtor formed MJM Real Estate, LLC ("MJM") to provide real estate services for the sales and leasing of residential projects. Finally, in 2013, the Debtor formed MonGroup Properties, Inc. ("MonGroup") to provide property management services. The Debtor owns 100% of these entities.

MJM is not currently operating and does not have any pending listings. MJM does not have any assets. MonGroup does not currently have any pending projects. MonGroup does not have any assets.

Due to the outstanding debts owed by these entities, the Debtor estimates that the value of these entities is $0.00.

### 1.2.2. DRMG

In 1985, the Debtor formed D.R. Mon Group, Inc. ("DRMG") which provides general contracting services for residential projects. DRMG holds a New Jersey Builders Registration License, which allows it to provide general contracting services. DRMG is in the process of updating this license, which expired on March 31, 2021. DRMG does not have any projects currently pending and has significant outstanding debt and no assets.

DRMG has the following estimated outstanding liabilities:[1]

| Creditor Name | Claim Amount |
|---|---|
| Anthony Bevilacqua | $147,284.84 |
| Connell Foley LLP | $665 |
| CPA Architecture, LLC | $15,000 |
| Curchin | $14,517.50 |
| Department of Treasury | $75.50 |
| Donald Drywall | $1,300 |
| FTR Electrical & Mechanical Co | $800 |
| George Baldwin | $209,670.83 |

---

[1] The Debtor and DRMG do not admit any liability for these claims and reserves all rights with regard to same.

4876-0115-3538, v. 1

| Creditor Name | Claim Amount |
|---|---|
| Great America Leasing Corp. | $888.52 |
| Michael R. Fink, Esq. | $14,031.33 |
| McManimon, Scotland & Baumann LLC | $29,337.85 |
| Nationwide | $14,560.00 |
| Peyton Advisory Services, Inc. | $172,540.72 |
| Pinilis Halpern, LLP | $5,103.75 |
| Purchase Power | $196.20 |
| SAGE CRE Forms | $1,214.86 |
| Seton Painting | $13,894.28 |
| Staples Credit Plan | $227.89 |
| State Treasurer of New Jersey | $377.50 |
| **TOTAL LIABILITIES** | **$642,986.57** |

The only potential asset of DRMG is the claim against the proceeds of the sale of 175 West, described herein. The amount claimed by DRMG is $134,457.59 for the general contractor fee and $17,000 in administrative fees. These claims remain subject to further litigation with the WLL Entities. These monies are held in trust by Michael Fink, Esq.

Due to the outstanding debts owed by DRMG, the Debtor estimates that the value of this entity is $0.00.

### 1.2.3. 175 West 7th Urban Renewal, L.L.C.

#### 1.2.3.1. The Property and the Sale

The Debtor is the seventy (70%) percent owner of 175 West 7th Urban Renewal, L.L.C. ("175 West"). 175 West is an urban renewal entity formed and qualified to do business under the provisions of the Long Term Tax Exemption Law of 1992, as amended and supplemented, N.J.S.A. 40A:20-1 et seq. On or about January 4, 2017, the Bayonne Planning Board adopted Resolution No. P-16-037 granting preliminary and final major site plan approval and bulk variance relief to Jinco Inc. to allow the construction of a five (5)-story building with fifty-six (56) workforce residential units and fifty-six (56) onsite parking spaces (the "Prior Project") on the property known as 175 West 7th Street, Bayonne, New Jersey 07002, identified as Block 304, Lot 1 on the official tax maps of the City of Bayonne (the "Property"). Thereafter, 175 West proposed adding both seven (7) new on-street parking spaces on 7th Street and common space areas, including a lounge/gym area and an outdoor roof deck located on top of the first floor parking garage which would include seating and planters (the "Current Project"). A full discussion of the status of the Current Project, the litigation surrounding the sale of 175 West, and the details of the sale of 175 West are contained in the First Day Declaration. [ECF 3].

On May 28, 2021, Presiding Judge Costello entered an order granting the following relevant relief ("Sale Order"):

    a. Permitted the Debtor, as Managing Member of 175 West, to take all steps necessary to sell the Property in accordance with the Contract with Gagin;

b. Directed all parties – including the WLL Entities and Epstein – to "fully cooperate in the sale of the Property";

c. Provided that all third-party bona fide debts be satisfied in full at the time of closing; and

d. Provided that the balance of the proceeds be placed in the attorney trust account of 175 West.

On June 14, 2021, after entry of the Sale Order, Presiding Judge Costello entered an Order closing the Chancery matter. The Court stated: "Summary Proceeding completed."

On July 14, 2021, the City Council for the City of Bayonne approved the transfer/assignment of the financial agreement to the Buyer. This was an essential pre-condition to the closing. The 45-day period to challenge the City Council's decision will expire in mid-September 2021.

After entry of the Sale Order, the Debtor moved forward to attempt to accomplish the Sale. The total third-party debt, including BCB's first mortgage, lienholders, and trade debt exceeds $7.3 million and continues to accrue every day. The closing occurred on October 28, 2021. A substantial portion of the 175 West debt asserts personal guarantee claims against the Debtor.

The closing of the sale of 175 West occurred on October 28, 2021. A copy of the Settlement Statement from the sale is filed on the docket, which shows the various distributions made of the proceeds of the sale. [ECF 173]. The following funds remain in escrow: (i) $40,792.25 as a credit from the seller pending resolution of a claim by PSE&G; and (ii) $740,261.83 in accordance with the Sale Order pending further litigation between the Debtor and the WLL Entities.

### 1.2.3.2. WLL/Epstein Issues

In 2018, Bruce Epstein became involved in two (2) of the Debtor's real estate projects: Jaclyn 40 and 175 West. Bruce Epstein owns and/or controls the WLL Entities. The WLL Entities owned twenty-five (25%) percent of Jaclyn 40 and thirty (30%) percent of 175 West.

Jaclyn 40 closed in or about February 2020. At that time, the WLL Entities received a substantial distribution and repayment of certain loans.

175 West was subject to an Operating Agreement. Under the Operating Agreement, the WLL Entities assert that they were entitled to various rights including the right to approve any "Major Decision" which included the sale of the 175 West property. The WLL Entities also assert that they were entitled to a guaranteed preferred rate of return. The WLL Entities assert that the $900,000 that they invested in 175 West were required to be deposited into the 175 West operating account. However, it is undisputed that the $900,000 which the WLL Entities invested was a purchase of thirty (30%) percent of the equity from the Debtor and thus was clearly wired to Mr. Mon's personal account.

8

In January 2021, the WLL Entities filed a lawsuit before the Superior Court of New Jersey, Chancery Division:  Hudson County which sought to block the transaction whereby Mr. Mon, as managing member, sought to maximize value by selling the project to an arms-length purchaser for $8.1 million.  The Chancery Part initially blocked the sale transaction and gave the WLL Entities sixty (60) days to attempt to market the property.  The WLL Entities asserted the property was worth in excess of $10 million but never produced an appraisal or buyer for any amount in excess of the contract.

On August 9, 2021, Dean Mon filed an Adversary Complaint to determine the nature, extent and validity of any liens including claims by the WLL Entities with regard to monies due to the Debtor and DRMG from the 175 West transaction.  See Adversary No. 21-01337(KCF).

On September 7, 2021, the WLL Entities filed a Complaint to determine the non-dischargeability of certain alleged debt pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(2)(B), 523(a)(4) and 523(a)(6).  See Adversary No. 21-01360(KCF).  On September 27, 2021, the Debtor filed his Answer to the Adversary Complaint and served discovery.

Pursuant to the Case Management Orders, both adversary proceedings are pending mediation before Bruce Levitt, Esq.  The mediation is currently scheduled for December 7, 2021.

The net proceeds from the 175 West closing were $740,261.83.  These monies are being held in the Attorney Trust Account of Michael Fink, Esq.  The Debtor asserts that he is entitled to repayment of a loan in the amount of $222,363 plus additional interest and charges which continue to accrue until full payment.  The eventual collectability of this loan is subject to the pending claim of the WLL Entities and the Debtor.

In addition, Lance Maiss and Big Horn Investment Group Ltd. (collectively, "Maiss") have asserted a lien against Mr. Mon's equity interest in 175 West.  Maiss failed to file a UCC-1 with the Secretary of State.  In the Maiss Answer he asserted a cross-claim against 175 West and Wanessa Vaccaro.  Ms. Vaccaro is not an owner and has never represented nor provided any services to Maiss.  175 West and Ms. Vaccaro have retained Andrew Kelly, Esq. and asserted that they are entitled to indemnification and contribution from DRMG and/or 175 West as a result of the claims.

### 1.2.4.  Liberty Park at Union City, L.L.C.

The Debtor was also a 50% owner of Liberty Park at Union City, L.L.C. ("Liberty Park").  On January 14, 2016, the Debtor purchased a 50% interest in Liberty Park from Kirti Desai for $523,383.  Liberty Park consists of a 0.43-acre assemblage of seven contiguous vacant residential lots (Block 260, Lots 30-36 on the tax map of Union City) located on the corner of 38th Street and Bergen Turnpike in the R – Low Density Residential zone of Union City, New Jersey (the "Union City Property").  The Union City Property is approved and proposed to be developed with a four-story, 48-unit multifamily building above a two-story fifty-five car parking garage with two elevators. The approvals consist of sixteen one-bedroom, one-bath units, four two-bedrooms, one-bath units, and twenty-eight two-bedrooms, two-baths units.  Notwithstanding the approvals, the Union City Property remains raw undeveloped land.  Construction has not begun at the Union City

Property.  Union City assets that the approvals expired and that Liberty Park must reapply for new approvals.

On or about July 14, 2021, Liberty Park entered into an agreement for sale of real estate (the "Agreement") with Georgette Benmoha, as purchaser.  The Agreement set forth a purchase price of $2.4 million for the sale of the Union City Property.

In addition to the Debtor's interest, Kenneth Desai owns 50% of Liberty Park.  This project was subject to a first lien in favor of Amboy National Bank.  Mr. Desai asserts he is entitled to a preferred return in the amount of approximately $690,000 before any equity distribution occurs.

The sale of Liberty Park closed on September 3, 2021.  As a result of the closing, the following amounts were dispersed:

| | |
|---|---|
| Kirti Desai | $1,256,815.42[2] |
| Michael R. Fink, Esq. | $4,080.00 |
| Liberty Park at Union City, LLC | $5,000.00 |
| DR Mon Group Inc. | $9,675.00 |
| Dean R. Mon | $826.00 |
| Pinnacle Landscaping & Stone, LLC | $1,332.81 |
| Rubin, Kaplan & Associates | $2,500.00 |
| Withum Smith & Brown PC | $5,000.00 |

At the time of closing, Mr. Mon's equity interest in Liberty Park was $535,757.61 which is being maintained in Trenk Isabel P.C.'s attorney trust account for payment of any priority tax obligations or administrative expenses, which are described in further detail herein.  To the extent funds remain, such funds will be used as an additional distribution to unsecured claimants, as set forth herein.

### 1.3. Filing of the Debtor's Chapter 11 Case.

On May 28, 2021, the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  The Chapter 11 case is pending in the Bankruptcy Court in Trenton, New Jersey.

---

[2] This amount represents Mr. Desai's preferred return as provided in Liberty Park's Operating Agreement and his 50% equity interest.

4876-0115-3538, v. 1

### 1.4. Legal Structure and Ownership.

The Debtor in this case is an individual.

### 1.5. Debtor's Assets.

The Debtor is the 100% owner of the following entities: (i) DRMG; (ii) MJM; and (iii) MonGroup. The Debtor is the 70% owner of 175 West. The Debtor is the 50% owner of Liberty Park. As described more fully herein, the 175 West and Liberty Park have been sold during the pendency of this case. The net sale proceeds from Liberty Park are escrowed with the Debtor's counsel for distribution set forth in this Plan (See Section 1.2.3, *supra*). The sale proceeds of 175 West are escrowed with Michael Fink, Esq. pending further litigation between the Debtor and his partners in 175 West – the WLL Entities (See Section 1.2.2, *supra*). The remaining contingencies relating to this litigation are set forth in Section 1.11, *infra*.

The Debtor does not own any real property.

The Debtor's schedules disclosed the following life insurance policies: (i) Nationwide Life Insurance Policy; Contract # ending in 5580 (the "DRMG Policy"); and (ii) Nationwide Life Insurance Policy; Contract # ending in 8750 (the "Trust Policy"). The Trust Policy had no cash surrender value and has lapsed as a result of the failure of the Debtor to continue making payments on this policy. The Debtor does not intend to renew this policy. Regardless, it has no value as it has no surrender value. The Trust Policy was a universal life insurance. The DRMG Policy has no surrender value but has a benefit of $2 million. The Debtor continues to make payments on this policy, but it has no value to the Debtor's estate because it has no cash surrender value. The beneficiary of the DRMG Policy is the Debtor's daughter.

The Debtor's cash in the Debtor-in-Possession account and disclosed throughout the case through the monthly operating reports will be used to fund the $50,000 distribution to general unsecured creditors and the Debtor's continuing living and operational costs, as disclosed on the projections attached hereto. The use of the Debtor's cash has been disclosed in each monthly operating report in this case. No parties, including the Subchapter V Trustee or the Office of the United States Trustee, have objected to any expenses in this case.

### 1.6. Debtor's Liabilities.

#### 1.6.1. Secured Claims

The Debtor does not believe that he has any secured claims. As set forth above, Maiss has asserted a lien against the Debtor's equity interest in 175 West. The Debtor has filed a complaint to determine the nature, extent and validity of this claims because Maiss failed to file a UCC-1 with the Secretary of State. Accordingly, the Debtor asserts that Maiss has no secured claim against the Debtor's assets. The adversary proceeding is currently pending mediation. The Debtor has served discovery. Adv. Pro. No. 21-01537 (KCF).

### 1.6.2.  Priority Tax Claims

In February 2020, Jaclyn 40 LLC's assets were conveyed.  The final tax returns have been filed, which reflect a substantial capital gain based upon his 75% interest in Jaclyn 40 LLC.  As set forth in the Plan at Docket Entry 173, there is tax debt due to the State of New Jersey, which is estimated at between $322,000 and $350,000 or more.  See ECF 173 at ¶15.  In addition, the Debtor's 2021 tax returns are not due until April 15, 2022, which will likely reflect a tax of approximately $115,000 based upon the 2021 sale of the Debtor's former residence in Sea Girt, NJ.

Any tax obligations will be paid from certain monies held in the Trenk Isabel P.C. Attorney Trust Account which relate to the net proceeds from the sale of Liberty Park, as set forth above.

### 1.6.3.  Unsecured Claims

As a result of the sales of 175 West and Liberty Park, various unsecured guarantee claims held against the Debtor have been resolved.  The Debtor's remaining unsecured debt consists of various credit card and remaining claims against the Debtor.

A discussion of claim objections that have been filed, resolved and/or may be filed can be found in Section 2.3, *infra*.

The Debtor estimates that, as of the filing of this plan, general unsecured claims total as follows:

| Claim No | Creditor Name | Claim Amount | Notes |
|---|---|---|---|
| 1 | McManimon, Scotland & Baumann, LLC | $74,299.37 | |
| 2 | Snowpoint Capital REIT Inc. | $0.00 | Expunged ($2,498,181.03) |
| 3 | JPMorgan Chase Bank, N.A. | $831.65 | |
| 4 | JPMorgan Chase Bank, N.A. | $2,211.27 | |
| 5 | Morabito Consultants, Inc. | $0.00 | Expunged ($4,455.00) |
| 6 | Discover Bank | $3,280.96 | |
| 7 | Ronald Sozio | $160,327.80 | |
| 8 | Amboy Bank | $0.00 | Expunged ($445,980.45) |
| 9 | American Express National Bank | $13,675.64 | |
| 10 | Not Class 4 Claim | | |
| 11 | Not Class 4 Claim | | |
| 12 | Toyota Lease Trust | $28,231.00 | |
| 13 | Joshua Jones | $171,907.89 | |

4876-0115-3538, v. 1

| | | | |
|---|---|---|---|
| 14 | Millennium Trust Company | $477,699.54 | Reduced by $400,000 pursuant to Consent Order to be entered. ($877,699.54) |
| 15 | Bank of America, N.A. | $3,395.05 | |
| 16 | JINCO, Inc. | $400,000.00 | |
| 17 | Bighorn Investment Group Ltd | $60,482.50 | Adversary Complaint pending, the result of which would make this amount a Class 4 claim. |
| 18 | Lance Maiss | $165,000.00 | Adversary Complaint pending, the result of which would make this amount a Class 4 claim. |
| 19 | BZK Holdings Broad, LLC | $0.00 | Expunged ($37,204.82) |
| 20 | Anthony Bevilacqua | $0.00 | Expunged ($125,519.57) |
| 21 | Peyton Advisory Services, Inc. | $202,549.45 | |
| 22 | Simpson & Brown Inc. | $0.00 | Resolved by Consent Order ($518,220.00) |
| 23 | Michael R. Fink, Esq. | $91,600.00 | |
| 24 | WLL 175 West No.1 LLC | $513,750.00 | Adversary Complaint pending. Claim Objection pending, the successful result of which would make this claim $0.00. |
| 25 | WLL 175 West No.2 LLC | $513,750.00 | Adversary Complaint pending. Claim Objection pending, the successful result of which would make this claim $0.00. |
| 26 | Concrete Systems, Inc. | $0.00 | Expunged ($1,649,810.48) |
| SCH | US Bank | $205.29 | |
| | **TOTAL CLAIMS** | **$2,883,197.41** | |
| | **Net of WLL Claims** | **($1,027,500)** | |
| | **NET CLAIMS** | **$1,855,697.41** | |

13

### 1.7. Current and Historical Financial Conditions.

The most recent information regarding the Debtor's current financial condition is contained in the Debtor's schedules, as amended thereafter, which were filed on the Petition Date. Schedules I and J reflect the Debtor's income and expenses. Since filing for bankruptcy, the Debtor has taken steps to reorganize his finances and minimize expenses in order to emerge from bankruptcy.

### 1.8. Events Leading to the Filing of the Bankruptcy Case.

The Debtor's financial issues stem from the litigation surrounding the sale of 175 West, which is detailed above and in the First Day Declaration. The Debtor personally guaranteed many of the debts of 175 West, but, most significantly, the note from BCB Community Bank to 175 West.

Because of the various guarantee claims and pending litigation, it was necessary to file for bankruptcy protection. Since the bankruptcy filing, the Debtor has taken steps to reorganize his finances and minimize expenses in order to emerge from bankruptcy.

### 1.9. Significant Events During the Bankruptcy Case.

On May 28, 2021, the Debtor filed a voluntary petition under chapter 11 (Subchapter V) of the Bankruptcy Code.

Also on May 28, 2021, the Debtor filed an application to retain Trenk Isabel P.C. as counsel to the Debtor. [ECF 4]. On June 21 2021, the Court entered an order approving retention of Trenk Isabel P.C. as counsel to the Debtor. [ECF 23].

On June 4, 2021, the United States Trustee appointed Nancy Isaacson, Esq., as the Subchapter V Trustee (the "Subchapter V Trustee").

On June 22, 2021, the Debtor filed an application to retain Bederson LLP as accountant to the Debtor. [ECF 26]. On June 30, 2021, the Court entered an order approving retention of Bederson LLP as accountant to the Debtor. [ECF 36].

On June 25, 2021, the Debtor filed a *Small Business Debtor's Plan of Reorganization* (the "Plan").[3]  [ECF 31].  On August 31, 2021, the Court entered an *Order Denying Confirmation of Debtor's Plan of Reorganization* ("Order Denying Confirmation"). [ECF 108].  Pursuant to the Order Denying Confirmation the powers of the Subchapter V Trustee under 11 U.S.C. § 1183 were expanded to include the powers set forth in 11 U.S.C. § 1106 (a)(3).

Pursuant to the Court's direction the Debtor filed a Certification Regarding Subchapter V Eligibility. Pursuant to the Debtor's Certification, after the removal of debt listed on the Debtor's petition without personal liability the Debtor's remaining debt was $4,638,360.73, as of the Petition Date which falls below the debt limits set forth for a Subchapter V bankruptcy filing. A

---

[3] Capitalized terms used but not defined herein shall have the same meaning ascribed to such terms in the Plan.

discussion of the Debtor's estimate of unsecured claims remaining can be found in Section 1.6, *supra*.

On August 26, 2021, the Subchapter V Trustee filed an application to retain Vestcorp LLC as accountant to the Subchapter V Trustee. [ECF 100]. On September 3, 2021, the Court entered an order approving retention of Vestcorp LLC as accountant to the Subchapter V Trustee. [ECF 114]. Vestcorp, LLC was specifically retained to investigate, among other things, Debtor's pre-petition transfer of funds received from the sale of assets and to file a report with regard to the findings of such investigation. The Subchapter V Trustee filed Vestcorp's report on the docket at ECF 144. The report reflects no additional causes of action that would enhance the potential debtor's estate. All monies received from the Jaclyn 40 transaction were used to fund the debtor's real estate businesses, pay outstanding debts or regular living expenses.

Pursuant to the Order Denying Confirmation the Debtor shall file his First Amended Plan of Reorganization by October 29, 2021.

On September 20, 2021, the Debtor filed an application to retain A. Atkins Appraisal Corp. ("Atkins") as appraiser to the Debtor in order to value an engagement ring purchased by the Debtor. [ECF 130]. On October 4, 2021, the Court entered an order approving retention of Atkins as appraiser to the Debtor. [ECF 150]. Atkins appraised the engagement ring at $7,000.

On September 30, 2021, the Debtor filed his *First Amended Small Business Debtor's Plan of Reorganization* (the "First Amended Plan"). Following the filing of the First Amended Plan, the Debtor continued to negotiate the terms of a plan with the Subchapter V Trustee and other parties in interest. As a result, the Debtor agreed to file this Second Amended Plan.

### 1.10.    Projected Recovery of Avoidable Transfers

On September 21, 2021, the Debtor filed an adversary complaint initiating the proceeding captioned *Mon v. Bank of America, N.A.* at Adv. Pro. No. 21-01369 (KCF) (the "BOA Adversary Proceeding"). The BOA Adversary Proceeding seeks to avoid transfers by the Debtor as preferential and recover the value of the avoided transfer in the amount of $9,000.00.

On September 21, 2021, the Debtor filed an adversary complaint initiating the proceeding captioned *Mon v. Discover Bank.* at Adv. Pro. No. 21-01370 (KCF) (the "Discover Adversary Proceeding"). The Discover Adversary Proceeding seeks to avoid transfers by the Debtor as preferential and recover the value of the avoided transfer in the amount of $15,268.00. On September 29, 2021, the Debtor filed a Notice of Settlement resolving the claim against Discover Bank. In exchange for a full release from the Debtor's estate, Discover Bank shall pay $11,175.50. The deadline to Object to the Notice of Settlement is October 26, 2021. No objections were filed an the settlement proceeds are held in the Trenk Isabel P.C. attorney trust account.

On September 21, 2021, the Debtor filed an adversary complaint initiating the proceeding captioned *Mon v. JP Morgan Chase Bank, N.A. s/b/m/t Chase Bank USA, N.A..* at Adv. Pro. No. 21-01371 (KCF) (the "Chase Adversary Proceeding"). The Chase Adversary Proceeding seeks to avoid transfers by the Debtor as preferential and recover the value of the avoided transfer in the amount of $46,227.78.

In addition, Nancy Isaacson, Subchapter V Trustee, is currently investigating certain payments paid by the Debtor's personal bank account within 90 days of the Petition Date to Karen Fluharty ("Ms. Fluharty"). In addition, $35,805.48 was wired to James Allen Jewelers within 30 days of the bankruptcy filing for the purchase of an engagement ring which was given to Ms. Fluharty by the Debtor. As set forth above, the Debtor's appraiser appraised the engagement ring at $7,000. The Debtor has proposed a $20,000 settlement to resolve all claims against Ms. Fluharty, which remains subject to court approval. The Subchapter V Trustee has objected to this settlement.

The Subchapter V Trustee's accountant, Vestcorp, identified certain preferential transfer in its report, which was filed on the docket at ECF 144. The following were identified:

| Party | Amount | Treatment |
|-------|--------|-----------|
| DRMG | $290,240 | These amounts were for the repayment of loans/settlements with various creditors, including some of those involved in this case. As described above, DRMG has no value, and, therefore, the Debtor does not intend to pursue actions against DRMG. Such claims would not result in any value for the estate as DRMG's liabilities exceed its assets. |
| Blackridge Realty | $50,600 | The Debtor does not intend to pursue this alleged claim. Such payment was made to Blackridge Realty as payment for 1 year of the Debtor's rent on his current residence. The Debtor's rent is $4,600 per month and he has resided at this address since March 2021. |
| Maggie Mon | $5,000 | The Debtor does not intend to pursue this alleged claim as such claim will not produce any value for the estate. The cost of such a claim exceeds the potential value. Ms. Mon is the Debtor's daughter. |

16

| Party | Amount | Treatment |
|-------|--------|-----------|
| Karen Fluharty | $46,770 | This claim is the subject of a pending settlement and is described in more detail above. |
| James Allen Jewelers | $35,805.48 | This claim is the subject of a pending settlement and is described in more detail above. |

To the extent any payments are received as a result of the adversary proceedings described above, such funds shall first be paid to any remaining amounts due on for priority tax claims or administrative expenses. Any remainder shall be an additional distribution to allowed general unsecured creditors, as set forth below.

The avoidance actions will continue to be prosecuted by Debtor's counsel. The cost of pursuing such actions will be treated as an administrative expense and paid in accordance with the Plan.

## 1.11.    Remaining Contingencies

Under this Plan, unsecured creditors will receive an additional distribution of any monies that are available from the sale of 175 West and Liberty Park after payment of administrative and priority claims and a resolution of three substantial remaining contingencies. The three substantial issues are as follows:

1.  Whether any administrative or priority tax debt is due to the state and federal officials. As set forth herein and restated at Docket Entry 173, there appears to be certain priority tax debt due to the State of New Jersey arising from the sale of Jaclyn 40 which is estimated due between $322,000 and $350,000 or more. See ECF 173 at ¶15. In addition, the Debtor's 2021 tax returns are not due until April 15, 2022 and there may be a capital gain tax obligation in the amount of approximately $115,000 based upon the sale of the Debtor's former Sea Girt property in 2021. Any tax obligations will be paid from funds held in the Trenk Isabel P.C. Attorney Trust Account which relate to the net proceeds from the sale of Liberty Park.

2.  The second issue which exists is asserted by the WLL Entities, the thirty (30%) percent owners of 175 West. The WLL Entities are owned or controlled by Bruce Epstein. The WLL Entities assert that under the 175 West Operating Agreement, the WLL Entities are entitled to a guaranteed rate of return and that the Debtor, as managing member of 175 West, violated certain aspects of the 175 West Operating Agreement. From the sale of 175 West, $740,261.83 is being held in the Attorney Trust Account of Michael Fink, Esq. See ECF 173, Exh. A. From these proceeds, it is asserted that $369,741 is due to: (i) DRMG ($147,378); and (ii) the Debtor, individually ($222,363). In addition, if the Debtor is successful, the net proceeds of $370,520.83 will be

17

distributed in accordance with the ownership percentages in 175 West.  Since Mr. Mon owns seventy (70%) percent of 175 West, that would be $259,364.58 additional monies available for administrative, priority and unsecured claims.  These issues are the subject of a contested adversary proceeding captioned <u>Dean R. Mon v. WLL</u>, Adv. Proc. No. 21-01360 (KCF).

3. The outcome of any preference recoveries from the adversary proceedings referenced in Section 1.10, *supra*.

Based upon the foregoing, the extent of any additional dividend to unsecured creditors will be premised upon the extent of priority and administrative tax obligations and the outcome of the WLL disputes.

## ARTICLE 2: THE PLAN.

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class or purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1. Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

As such, the Plan does not place the following Claims in any class:

### A. *Administrative Expenses*

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this

Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.      If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.      If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.      Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Payment through the Plan as follows: N/A |
| Administrative Tax Claim | $0.00 | Payment through the Plan as follows: N/A |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Payment through the Plan as follows: N/A |
| Professional fees, as approved by the Bankruptcy Court | Approximately $150,000 | After Bankruptcy Court approval, Payment through the Plan as follows: Paid in full on the Effective Date or by other agreement between the Debtor and the Administrative Claimant. |

19

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | Payment through the Plan as follows: N/A |
| Trustee | Approximately $30,000 | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows: Paid in full on the Effective Date or by other agreement between the Debtor and the Administrative Claimant. |
| Trustee's Accountant | Approximately $20,000 | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows: Paid in full on the Effective Date or by other agreement between the Debtor and the Administrative Claimant. |
| TOTAL | Approximately $200,000 | |

As set forth above, the Debtor will pay an Administrative Expenses from the sale proceeds of 175 West and Liberty Park and net preference recoveries, *provided*, *however*, that such funds remain after payment of priority tax claims.

### B. Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth below. As set forth in Section 1.6.2, *supra*, the Debtor believes that his tax obligations for the State of New Jersey are between $322,000 and $350,000. In addition, the Debtor's 2021 tax returns are not due until April 15, 2022, which may reflect an additional tax of $115,000 from the sale of the Debtor's former residence in Sea Girt, NJ. Thus, the total priority taxes are projected at approximately $465,000. In addition, the 2020 tax returns require that they be accepted by the IRS under 11 U.S.C. § 505.

4876-0115-3538, v. 1

Any priority tax debt shall be paid from the proceeds received by the Debtor from the sale of 175 West, Liberty Park and net preference recoveries. The balance of the any Priority Tax Claim shall be paid over five (5) years in equal quarterly installments in conformance with section 507(a)(8) of the Bankruptcy Code.

### 2.2. Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A. *Classes of Secured Claims*

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The Debtor disputes each of the secured claims and has found no records that such claims have been properly perfected under New Jersey law.

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|---|---|---|---|---|---|
| 1 | Bighorn Investments Group LTD | N | Y | $50,000 | Treated as Class 4 claim following the determination of adversary proceeding. |
| 2 | Lance Maiss | N | Y | $150,000 | Treated as Class 4 claim following the determination of adversary proceeding. |
| 3 | Millennium Trust Company, LLC | N | Y | Claim settled pursuant to Consent Order | Millennium was paid $400,000.00 from the proceeds of the sale of 175 West. The balance of Millennium's claim ($477,699.54) will be allowed as a general unsecured (non-priority) claim. |

### B. *Classes of Priority Unsecured Claims.*

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:  The Debtor does not have any Priority Unsecured Claims.

### C. *Class of General Unsecured Claims*

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 4, which contain general unsecured Claims against the Debtor:

4876-0115-3538, v. 1

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | General Unsecured Class | Y | Quarterly Pmt = $2,500 Pmts Begin = Three (3) months after the Effective Date. Pmts End = Five (5) years following commencement of payments. Interest rate 0% Estimated percent of claim paid = .02% To the extent that the Debtor's net proceeds from the sale of 175 West, Liberty Park and net preference recoveries are not needed to satisfy his priority tax debt and any administrative claims, as set forth above, such remaining proceeds shall be made available as an additional distribution to allowed unsecured creditors. Such payment shall be made by the Disbursing Agent upon the resolution of all tax liabilities and preference claims. In addition, to the extent applicable, the Reorganized Debtor shall provide that his disposable income[4] (as defined in 11 U.S.C. § 1191 (d1)) shall be used for a period of 3 years to pay any administrative or priority obligations and any remaining balance distributed pro rata to allowed class 4 unsecured creditors. |

---

[4] As set forth herein at length, Debtor has over 35 years of experience in real estate development. See §1.1. Due to various factors including the Debtor's age, health and financial resources and the realities of COVID-19, it is impossible to project what disposable income may exist to supplement the base dividend herein. Regardless, the

4876-0115-3538, v. 1

### D.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.,* equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The Debtor is an individual and, therefore, is the Equity Interest holder. Section 2.5 of the Plan provides for all the Debtor's assets to revest in the Debtor.

### 2.3. Estimated Number and Amount of Claims Objections.

The Debtor filed its First Omnibus Claim Objection ("Claims Objection") on August 9, 2021 objecting to the following claims:

| Name of Creditor | Claim Number |
|---|---|
| SnowPoint Capital REIT, Inc. | Claim No. 2 |
| Morabito Consultants, Inc. | Claim No. 5 |
| Amboy Bank | Claim No. 8 |
| BZK Holdings Broad, LLC & E Group Ventures Shrewsbury, LLC | Claim No. 19 |
| Anthony and Pamela Bevilacqua | Claim No. 20 |
| Simpson & Brown Inc. | Claim No. 22 |
| WLL 175 West No.1 LLC | Claim No. 24 |
| WLL 175 West No.2 LLC | Claim No. 25 |
| Concrete Systems, Inc. | Claim No. 26 |

[ECF 80].  On September 14, 2021, the hearing on the Claims Objection was held and the requested relief was granted as to Morabito Consultants, Inc., Amboy Bank, BZK Holdings Broad, LLC & E Group Ventures Shrewsbury, LLC, Anthony and Pamela Bevilacqua and Concrete Systems, Inc.

---

Debtor will provide periodic reports and is committed to making every effort to rebuild his real estate and financial life.

The Order on the Claims Objection was entered on September 24, 2021. The objection as to SnowPoint Capital REIT, Inc. and Simpson & Brown Inc. have been resolved by Consent Order. The hearing as to WLL 175 West No.1 LLC and WLL 175 West No.1 LLC has been rescheduled to November 9, 2021 at 10:00 a.m.

In addition, the Debtor filed an adversary complaint initiating the proceeding captioned *Mon v. Maiss, et al.* at Adv. Pro. No. 21-01337 (KCF) (the "Maiss Adversary Proceeding"). The Maiss Adversary Proceeding seeks a determination of the nature, extent, and validity of the alleged secured claims filed by the following parties: (i) Lance Maiss; (ii) Bighorn Investment Group Ltd; (iii) Millennium Trust Company, LLC, as Custodian for the Benefit of Dennis M. Sweeney Alternative Investment IRA; (iv) WLL 175 West No.1 LLC; and (v) WLL 175 West No.2 LLC. In addition, the Maiss Adversary Proceeding seeks turnover of any remaining sale proceeds from 175 West 7th Urban Renewal, LLC.

In addition, Claim No. 12 is being assumed under the Plan and may be expunged by the Court.

## 2.4. Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[ X ] Assumption of Executory Contracts.

The Executory Contracts shown on **Exhibit C** shall be assumed by the Debtor.

Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. **Exhibit C** also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[ ] Assumption and Assignment of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit shall be assumed by the Debtor and assigned to the party listed in that Exhibit. Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the

type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[  ] Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit shall be rejected by the Debtor.

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

### 2.5. Means for Implementation of the Plan.

The Plan will be funded by the Debtor's continued monthly income, the cash available in the debtor in possession bank accounts, and the remaining proceeds of sale of the real property interests owned by the Debtor and any net preference recoveries.  There shall be no prepayment penalty for any priority, administrative or Class of claims referenced above.  Notwithstanding anything in this section, the treatment of each class of creditors shall be as set forth in section 2.1 and 2.2 of this Plan, as applicable.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.

### 2.6. Payments.

Trenk Isabel P.C. shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  Trenk Isabel P.C. shall serve without bond and shall be paid its normal hourly rates for services provided in this regard.  Such services shall be considered administrative expenses under the Plan.

Except as otherwise provided in the Plan, any distribution under the Plan which is unclaimed after three (3) months following any distribution date shall be forfeited, and such distribution, together with any interest earned thereon, shall return to and revest in the Reorganized Debtor to redistribute to other claimants.

4876-0115-3538, v. 1

## 2.7. Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows: The Debtor is an individual and does not have any Officers/Managers.

The Subchapter V Trustee shall be terminated in accordance with 11 U.S.C. § 1183(c).

## 2.8. Tax Consequences of the Plan.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to Debtor. The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences that the Plan will have on the Debtor's tax liability: None anticipated.

## 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information. Those projections are listed in **Exhibit A**.

## <u>ARTICLE 3: FEASIBILITY OF PLAN.</u>

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

## 3.1. Ability to Initially Fund Plan.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as **Exhibit D**.

4876-0115-3538, v. 1

### 3.2. Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in **Exhibit A** (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post- confirmation taxes.  The final Plan payment is expected to be paid five years following the initial payment under the Plan.

The Debtor believes that the Plan is feasible. There are two aspects of a feasibility analysis. The first aspect considers whether Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.

The Debtor maintains that the first aspect of feasibility is satisfied as illustrated here, based upon the value of the Debtor's assets.  The Debtor will have sufficient cash on hand at confirmation to make the payments necessary under this Plan, despite any negative cash flow that is projected. The second aspect of the feasibility requirement is met since the Debtor is offering to satisfy unsecured creditors through payments spanned over five (5) years. Moreover, payments will be made from the Debtor's continued sources of income from social security and potential new projects, the cash available in the debtor in possession bank account, and the sale of any additional assets not otherwise identified in the plan for sale (i.e. Liberty Park and 175 West), as necessary and determined in the discretion of the Debtor.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

### ARTICLE 4: LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit E**.

### ARTICLE 5: DISCHARGE.

### 5.1. Discharge.

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

4876-0115-3538, v. 1

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6: GENERAL PROVISIONS.

### 6.1. Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues

regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## <u>ARTICLE 7: ATTACHMENTS.</u>

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[ ]     Debtor's Assets at Fair Market Value, annexed as Exhibit __.

[ ]     Debtor's Liabilities, annexed as Exhibit ___.

[X]     Financial forecast for the Debtor, annexed as **<u>Exhibit A</u>**.

[ ]     Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___.

[X]     Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as **<u>Exhibit B</u>**.

4876-0115-3538, v. 1

[ ]    Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.

[]    Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit ___.

[X]    Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as **Exhibit D**.

[X]    Liquidation Analysis, annexed as **Exhibit E**.

## ARTICLE 8: FREQUENTLY ASKED QUESTIONS.

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.  Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the

31

Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is . Ballots should be mailed to the following address: Robert S. Roglieri, Esq., Trenk Isabel P.C., 290 W. Mt. Pleasant Avenue, Suite 2350, Livingston, NJ 07039.

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9: DEFINITIONS.

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are the convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.**    **Administrative Claimant:** Any person entitled to payment of an Administration Expense.

**9.3.**    **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.**    **Administrative Expense:** Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

4876-0115-3538, v. 1

**9.5.    Administrative Tax Claim:** Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.    Allowed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.    Allowed Priority Tax Claim:** A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.    Allowed Secured Claim:** Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9.    Allowed Unsecured Claim:** An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court:** The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case:** This case under chapter 11 of the Bankruptcy Code in which Dean R. Mon is the Debtor-in-Possession.

**9.15.    Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.    Confirmation Hearing:** The hearing to be held on , 20 to consider confirmation of the Plan.

**9.20.    Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor:** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession:** Dean R. Mon, the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date:** Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest:** An ownership interest in the Debtor.

**9.27.    Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC:** The Internal Revenue Code filed.

**9.30.    Petition Date:** May 28, 2021, the date the chapter 11 petition for relief was

**9.31.    Plan:** This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor:** The Debtor after the Effective Date.

**9.34.    Schedules:** Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Creditor:** Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.    Trustee:** Nancy Isaacson, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b).

**9.37.    Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

Dated:  November 8, 2021            **TRENK ISABEL P.C.**

_/s/ Richard D. Trenk_____
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2350
Livingston, New Jersey 07039
Telephone:  (973) 533-1000
Email:  rtrenk@trenkisabel.law
Email:  rroglieri@trenkisabel.law

_Counsel to Dean R. Mon,_
_Chapter 11 Debtor and Debtor-in-Possession_

35

**EXHIBIT A – FINANCIAL PROJECTIONS**

Dean R Mon Monthly Projections[1]

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Rent | $23,000.00 | $23,690.00 | $24,400.70 | $25,132.72 | $25,886.70 |
| RE taxes | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Property, homeowner's, or renter's insurance | $180.00 | $180.00 | $180.00 | $180.00 | $180.00 |
| Home maintenance, repair, and upkeep expenses | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Homeowner's association or condominium dues | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Utilities:** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Electricity, heat, natural gas | $900.00 | $909.00 | $918.09 | $927.27 | $936.54 |
| Water, sewer, garbage collection | $180.00 | $180.00 | $180.00 | $180.00 | $180.00 |
| **Food and housekeeping supplies** | $12,000.00 | $12,120.00 | $12,241.20 | $12,363.61 | $12,487.25 |
| **Clothing, laundry, and dry cleaning** | $480.00 | $480.00 | $480.00 | $480.00 | $480.00 |
| **Personal care products and services** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Medical and dental expenses, and medicare** | $3,500.00 | $3,535.00 | $3,570.35 | $3,606.05 | $3,642.11 |
| **Transportation.** Include gas, maintenance, bus or train fare, auto lease and car insurance | $15,456.00 | $15,456.00 | $15,456.00 | $15,456.00 | $15,456.00 |
| **Entertainment, clubs, recreation, newspapers, magazines, and books** | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
| **Other**: Specify:  Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Dividend to Class 4 Allowed Creditors | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| **Calculate your monthly expenses** | | | | | |
| Add lines 3 through 18 | $66,896.00 | $67,750.00 | $68,626.34 | $69,525.66 | $70,448.61 |
| **Calculate your monthly net income.** | | | | | |
| Copy line 12 *(your combined monthly income)* from Schedule I. | $38,816.16 | $39,204.32 | $39,596.36 | $39,992.33 | $40,392.25 |
| Copy your monthly expenses from line 22c above. | $66,896.00 | $67,750.00 | $68,626.34 | $69,525.66 | $70,448.61 |
| Subtract your monthly expenses from your monthly income. The result is your *monthly net income* . | -$28,079.84 | -$28,545.68 | -$29,029.98 | -$29,533.33 | -$30,056.36 |

| | | | | | |
|---|---|---|---|---|---|
| Potential preference recoveries | $55,000.00 | | | | |

---

[1] These amounts are net of any contribution by the Debtor's fiance.

**EXHIBIT B – MONTHLY OPERATING REPORT**

**Fill in this information to identify the case:**

Debtor Name Dean R. Mon

United States Bankruptcy Court for the: District of New Jersey

Case number: 21-14511-KCF

☐ Check if this is an
amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11    12/17

Month: __August 2021__

Date report filed: __09/22/2021__
MM / DD / YYYY

Line of business: __RE Development & Mgmt.__

NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:

Original signature of responsible party

Printed name of responsible party  DEAN R MON

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
|  | If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*. |  |  |  |
| 1. | Did the business operate during the entire reporting period? | ☐ | ☐ | ☑ |
| 2. | Do you plan to continue to operate the business next month? | ☐ | ☐ | ☑ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☑ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☑ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☑ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
|  | If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*. |  |  |  |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Dean R. Mon                                    Case number  21-14511-KCF

| | | | |
|---|---|---|---|
| 17. Have you paid any bills you owed before you filed bankruptcy? | ❏ | ☑ | ❏ |
| 18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? | ❏ | ☑ | ❏ |

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

   This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

   $ 243,184.20

20. **Total cash receipts**

   Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

   Report the total from *Exhibit C* here.

   $ 3,310.05

21. **Total cash disbursements**

   Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

   Report the total from *Exhibit D* here.

   − $ 42,551.57

22. **Net cash flow**

   Subtract line 21 from line 20 and report the result here.
   This amount may be different from what you may have calculated as *net profit*.

   + $ -39,241.52

23. **Cash on hand at the end of the month**

   Add line 22 + line 19. Report the result here.

   Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

   = $ 203,942.68

   This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

   $ 0.00

   *(Exhibit E)*

Debtor Name  Dean R. Mon

Case number  21-14511-KCF

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**

$ 218,786.00

*(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?

0

27. What is the number of employees as of the date of this monthly report?

0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?

$ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?

$ 0.00

30. How much have you paid this month in other professional fees?

$ 0.00

31. How much have you paid in total other professional fees since filing the case?

$ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | *Column A* | | *Column B* | | *Column C* |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ ___ | − | $ 3,310.05 | = | $ ___ |
| 33. **Cash disbursements** | $ ___ | − | $ 42,551.57 | = | $ ___ |
| 34. **Net cash flow** | $ ___ | − | $ -39,241.52 | = | $ ___ |

35. Total projected cash receipts for the next month:  $ ___

36. Total projected cash disbursements for the next month:  − $ ___

37. Total projected net cash flow for the next month:  = $ ___

Debtor Name  Dean R. Mon _____     Case number  21-14511-KCF _____

### 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑  38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑  39. Bank reconciliation reports for each account.

☐  40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41. Budget, projection, or forecast reports.

☐  42. Project, job costing, or work-in-progress reports.

| DRM Personal Monthly Reporting GL (8/01 to 8/31/21) | | | | |
|---|---|---|---|---|
| **Amboy Bank -2794 DIP** | | | | |
| Beginning Cash Balnce | | | $243,184.20 | B |
| *Deposits* | | | | |
| **Date** | **Vendor** | **Source of Income** | **Amount** | |
| 17-Aug | Home Depot | returned item | $ 14.44 | |
| 18-Aug | SSA | SSI | $ 3,071.00 | |
| 26-Aug | Ray Catena Lexus | overpayment of missed car payment | $ 216.03 | |
| 31-Aug | Amboy | earned interest | $ 8.58 | |
| | | **Total Deposits** | $ 3,310.05 | |
| | | | | |
| | | | | |
| *Withdrawals* | | | | |
| **Date** | **Payee** | **Description** | **Amount** | |
| 2-Aug | McDonalds | food | $ 3.92 | |
| 2-Aug | Starbucks | food | $ 5.78 | |
| 2-Aug | FES Education | bankruptcy credit course fee | $ 31.90 | |
| 2-Aug | Pour House | food | $ 39.59 | |
| 2-Aug | Sirena | food | $ 47.62 | |
| 2-Aug | Pour House | food | $ 48.27 | |
| 2-Aug | Wine Outlet | wine | $ 96.04 | |
| 2-Aug | WholeFoods | groceries | $ 103.01 | |
| 3-Aug | McDonalds | food | $ 3.92 | |
| 3-Aug | Wave Resort | food | $ 4.73 | |
| 3-Aug | Starbucks | food | $ 5.86 | |
| 3-Aug | Nature's Corner | groceries | $ 38.97 | |
| 4-Aug | TrenkIsabel | legal fees | $ 24,868.45 | |
| 4-Aug | ACME | groceries | $ 8.96 | |
| 4-Aug | Speedway | gas | $ 10.79 | |
| 4-Aug | ACME | groceries | $ 13.55 | |
| 4-Aug | Harpoon Willy | food | $ 48.38 | |
| 4-Aug | Fratello's | food | $ 52.50 | |
| 4-Aug | Amboy | wire fee | $ 25.00 | |
| 5-Aug | Starbucks | food | $ 5.86 | |
| 5-Aug | Speedway | gas | $ 34.10 | |
| 5-Aug | White Dove Cleaners | dry cleaners | $ 43.30 | |
| 6-Aug | Apple | phone app | $ 2.99 | |
| 6-Aug | Pour House | food | $ 43.72 | |
| 6-Aug | Harpoon Willy | food | $ 48.26 | |
| 9-Aug | Wave Resort | food | $ 3.73 | |
| 9-Aug | McDonalds | food | $ 3.92 | |
| 9-Aug | Wave Resort | food | $ 5.80 | |
| 9-Aug | Starbucks | food | $ 5.86 | |
| 9-Aug | Starbucks | food | $ 5.86 | |
| 9-Aug | Wave Resort | food | $ 12.14 | |
| 9-Aug | Surf Taco | food | $ 41.49 | |
| 9-Aug | Pour House | food | $ 45.27 | |
| 9-Aug | Starbucks | food | $ 50.00 | |
| 9-Aug | Home Depot | supplies | $ 54.84 | |

9/16/2021

| Date | Payee | Description | Amount |
|------|-------|-------------|--------|
| 10-Aug | ATM | apartment cleaning and handyman for picture hanging | $ 203.00 |
| 10-Aug | Staples | office supplies | $ 5.62 |
| 10-Aug | Staples | office supplies | $ 8.00 |
| 10-Aug | RP Police+T | contribution | $ 35.00 |
| 11-Aug | 7-Eleven | groceries | $ 11.12 |
| 11-Aug | Pour House | food | $ 49.71 |
| 11-Aug | Pizzeta Enoteca | food | $ 163.98 |
| 12-Aug | ACME | groceries | $ 27.22 |
| 12-Aug | Speedway | gas | $ 33.00 |
| 12-Aug | ACME | groceries | $ 43.96 |
| 12-Aug | Pour House | food | $ 49.87 |
| 16-Aug | MPA Street Meter | parking | $ 1.00 |
| 16-Aug | McDonalds | food | $ 3.92 |
| 16-Aug | McDonalds | food | $ 3.92 |
| 16-Aug | Wave Resort | food | $ 4.73 |
| 16-Aug | Wave Resort | food | $ 4.73 |
| 16-Aug | Home Depot | supplies | $ 10.64 |
| 16-Aug | ACME | groceries | $ 23.83 |
| 16-Aug | Campbell's pharmacy | prescriptions | $ 45.00 |
| 16-Aug | Pour House | food | $ 49.27 |
| 16-Aug | Fratello's | food | $ 52.00 |
| 16-Aug | White Dove Cleaners | dry cleaners | $ 75.35 |
| 16-Aug | Extra Space | storage fee | $ 301.86 |
| 17-Aug | ACME | groceries | $ 18.06 |
| 17-Aug | Starbucks | food | $ 30.00 |
| 17-Aug | Home Depot | electric pressure washer rental | $ 50.00 |
| 17-Aug | Toyota | car payment (2 months) | $ 1,526.00 |
| 18-Aug | Starbucks | food | $ 30.00 |
| 18-Aug | Sprint | cell phone | $ 267.72 |
| 19-Aug | Pour House | food | $ 51.87 |
| 19-Aug | ATM | haircut | $ 60.00 |
| 19-Aug | Pour House | food | $ 65.61 |
| 19-Aug | Wine Outlet | wine | $ 96.04 |
| 20-Aug | Fratello's | food | $ 10.75 |
| 20-Aug | CJ McCloones | food | $ 16.00 |
| 20-Aug | Pour House | food | $ 43.45 |
| 23-Aug | Wave Resort | food | $ 5.80 |
| 23-Aug | Speedway | gas | $ 22.03 |
| 23-Aug | Campbell's pharmacy | prescriptions | $ 30.19 |
| 23-Aug | Sirena | food | $ 32.00 |
| 23-Aug | Wegmans | groceries | $ 49.21 |
| 23-Aug | Pour House | food | $ 49.86 |
| 23-Aug | White Dove Cleaners | dry cleaners | $ 75.10 |
| 24-Aug | McDonalds | food | $ 3.92 |
| 24-Aug | Wave Resort | food | $ 5.53 |
| 24-Aug | Phillips | gas | $ 29.08 |
| 25-Aug | Wave Resort | food | $ 5.53 |
| 25-Aug | Pour House | food | $ 44.39 |

2

9/16/2021

| Date | Payee | Description | Amount | |
|------|-------|-------------|--------|---|
| 25-Aug | Pour House | food | $ 56.65 | |
| 26-Aug | Sunoco | gas | $ 12.27 | |
| 26-Aug | Starbucks | food | $ 30.00 | |
| 26-Aug | Harpoon Willy | food | $ 46.92 | |
| 26-Aug | ATM | apartment cleaning | $ 100.00 | |
| 27-Aug | WNY Parking | parking fee | $ 1.50 | |
| 27-Aug | Delta North Bergen | gas | $ 33.82 | |
| 27-Aug | ACME | groceries | $ 40.65 | |
| 30-Aug | ATM | helper/organizer | $ 83.00 | |
| 30-Aug | McDonalds | food | $ 3.92 | |
| 30-Aug | Wave Resort | food | $ 4.73 | |
| 30-Aug | Shoprite | groceries | $ 7.28 | |
| 30-Aug | Fratello's | food | $ 15.75 | |
| 30-Aug | Fratello's | food | $ 25.00 | |
| 30-Aug | Wine Outlet | wine | $ 31.98 | |
| 30-Aug | H2O Restaurant | food | $ 40.00 | |
| 30-Aug | Pour House | food | $ 45.99 | |
| 30-Aug | Pour House | food | $ 55.08 | |
| 30-Aug | Fratello's | food | $ 57.70 | |
| 30-Aug | NJEZPass | tolls | $ 108.25 | |
| 31-Aug | Kwik | groceries | $ 12.30 | |
| 31-Aug | Harpoon Willy | food | $ 47.53 | |
| 31-Aug | Amboy | bank fee | $ 2.00 | |
| | | **Total withdrawals** | $ 30,551.57 | A |

| *Checks* | | | | |
|------|-------|-------------|--------|---|
| Date | Payee | Description | Amount | |
| 25-Aug | D.R. Mon Group | monthly operating expenses | $ 12,000.00 | |
| | | **Total checks** | $ 12,000.00 | A |

| | | | | |
|---|---|---|---|---|
| | | Total Deposits: | $ 3,310.05 | |
| | | Total withdrawals/checks: | $ 42,551.57 | ΣA's |
| | | Net Cash Flow | $ (39,241.52) | C |
| | | Ending Cash Balance | $203,942.68 | B+C |

9/16/2021

For the period 07-31-2021 to 08-31-2021   Page 1 of 4
019 015 0-030-000-00000000

☎ For customer service
or current rates
call: 732-591-2530

✉ Write to:
Amboy Bank
3590 U. S. Highway 9
Old Bridge, NJ 08857

🖥 Visit us at
www.amboybank.com

DEAN R MON
DEBTOR IN POSSESSION
345 OCEAN BLVD APT 306
LONG BRANCH    NJ 07740

☎ Amboy 24
(Telephone Banking)
call 1-877-24 AMBOY

For 23 years in a row, Amboy Bank
has been voted "The Best Bank in Central NJ"

Vote for us again this year
and enter our Summer Fun contest
to win a fun giveaway
at AmboyBank.com/SummerFun

## Advantage Chk I I I Account                          Account number: ▮▮2794

### Account Balance Summary

| | | Interest Summary | |
|---|---|---|---|
| Beginning Balance on 07-30 | $243,184.20 | Interest paid year to date | $8.58 |
| Deposits and other credits (+) | $3,310.05 | Number of days this statement period | 15 |
| Withdrawals, checks and other debits (-) | $42,551.57 | Annual Percentage Yield Earned | 0.10% |
| Ending Balance on 08-31 | $203,942.68 | Interest earned this statement period | 8.58 |

### Deposits and Other Credits

| Date | Description | Amount | Date | Description | Amount |
|---|---|---|---|---|---|
| 08-17 | 26313 RETURN-REFUND THE HOME DEPOT # PINE BROOK NJ 00000000 026313 | 14.44 | 08-26 | DEPOSIT | 216.03 |
| 08-18 | XXXXX4569A SSA SSA TREAS 310 XX SOC SEC | 3,071.00 | 08-31 | INTEREST | 8.58 |

### Checks

| Check # | Date | Amount | Check # | Date | Amount | Check # | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 109 | 08-26 | 12,000.00 | | | | | | |

### Withdrawals and Other Debits

| Date | Description | Amount | Date | Description | Amount |
|---|---|---|---|---|---|
| 08-02 | 80939 - MCDONALD'S F6713 LONG BRANCH NJ 1 080939 | 3.92 | 08-02 | 60670 - THEPOURHOUSE SHREWSBURY NJ 78154388 060670 | 39.59 |
| 08-02 | 282643 - STARBUCKS 800 78 SEATTLE WA 002 121308282643 | 5.78 | 08-02 | 20201 - SIRENA 732-2221 119 NJ 79458559 020201 | 47.62 |
| 08-02 | 66255 - FES EDUCATION 844-238-2221 FL 00000000 066255 | 31.90 | 08-02 | 42440 - THEPOURHOUSE SHREWSBURY NJ 78154388 042440 | 48.27 |

For the period 07-31-2021 to 08-31-2021

DEAN R MON

## Advantage Chk I I I Account                    Account number: ⬛2794

### Withdrawals and Other Debits (cont.)

| Date | Description | Amount | Date | Description | Amount |
|------|-------------|--------|------|-------------|--------|
| 08-02 | 43660 - WINE OUTLET WALL WALL TOWNSHIP NJ 59623670 043660 | 96.04 | 08-09 | 460015 - STARBUCKS 800 78 SEATTLE WA 002 121907460015 | 5.86 |
| 08-02 | 245135 - WHOLEFDS MID 102 RED BANK NJ 99999999 245135 | 103.01 | 08-09 | 30006 - WAVE RESORT F & LONG BRANCH NJ 00B 29236 030006 | 12.14 |
| 08-03 | 27972 - MCDONALD'S F6713 LONG BRANCH NJ 1 027972 | 3.92 | 08-09 | 27389 - TST* SURF TACO - LONG BRANCH NJ 82027389 027389 | 41.49 |
| 08-03 | 30017 - WAVE RESORT F & LONG BRANCH NJ 00B 29236 030017 | 4.73 | 08-09 | 27212 - THEPOURHOUSE SHREWSBURY NJ 78154388 027212 | 45.27 |
| 08-03 | 45280 - STARBUCKS 800 78 SEATTLE WA 002 121509045280 | 5.86 | 08-09 | 263649 - STARBUCKS 800 78 SEATTLE WA 002 122109263649 | 50.00 |
| 08-03 | 29141 - NATURES CORNER N SPRING LAKE NJ 41105301 029141 | 38.97 | 08-09 | 966901 - THE HOME DEPOT 0 W LONG BRANCH NJ 06131487 1220710 | 54.84 |
| 08-04 | Outgoing Wire 29236 | 24,868.45 | 08-10 | 170868 - BANK OF AMERICA WALL TOWNSHIP NJ INJH6032 170868 | 203.00 |
| 08-04 | 921943 - ACME 1582 BOONTON NJ 46247748 921943 | 8.96 | 08-10 | 26061 - STAPLES 00 SHREWSBURY NJ 026 026061 | 5.62 |
| 08-04 | 159417 - Speedway 556 M yr Boonton NJ 99999999 159417 | 10.79 | 08-10 | 26063 - STAPLES 00 SHREWSBURY NJ 026 026063 | 8.00 |
| 08-04 | 820835 - ACME 1582 BOONTON NJ 46247793 820835 | 13.55 | 08-10 | 85095 - R P* Police and T 725-2219656 NV 00000007 085095 | 35.00 |
| 08-04 | 36032 - TST* HARPOON WIL MANASQUAN NJ 79836032 036032 | 48.38 | 08-11 | 981738 - 7-ELEVEN PINE BROOK NJ 00M7DP01 122219981738 | 11.12 |
| 08-04 | 36838 - FRATELLO'S RESTA SEA GIRT NJ 00000000 036838 | 52.50 | 08-11 | 58796 - THEPOURHOUSE SHREWSBURY NJ 78154388 058796 | 49.71 |
| 08-04 | Domestic Outgoing Wire Fee 29236 | 25.00 | 08-11 | 0016 - PIZZETA ENOTECA LIVINGSTON NJ V4324091 000016 | 163.98 |
| 08-05 | 297472 - STARBUCKS 800 78 SEATTLE WA 002 121709297472 | 5.86 | 08-12 | 525476 - ACME 0780 WALL TOWNSHIP NJ 46242151 525476 | 27.22 |
| 08-05 | 1935 - SPEEDWAY 03477 BOONTON NJ 00000000 001935 | 34.10 | 08-12 | 78943 - SPEEDWAY 03477 BOONTON NJ 00000000 078943 | 33.00 |
| 08-05 | 84227 - WHITE DOVE CLEAN TINTON FALLS NJ 75276002 084227 | 43.30 | 08-12 | 375892 - ACME 0780 WALL TOWNSHIP NJ 46242193 375892 | 43.96 |
| 08-06 | 40392 - APPLE.COM/BILL 408-974-1010 CA 00000000 040392 | 2.99 | 08-12 | 98171 - THEPOURHOUSE SHREWSBURY NJ 78154388 098171 | 49.87 |
| 08-06 | 69929 - THEPOURHOUSE SHREWSBURY NJ 78154388 069929 | 43.72 | 08-16 | 81500 - MPA STREET METER MORRISTOWN NJ 00000000 081500 | 1.00 |
| 08-06 | 18917 - TST* HARPOON WIL MANASQUAN NJ 86318917 018917 | 48.26 | 08-16 | 0516 - MCDONALD'S F6713 LONG BRANCH NJ 1 000516 | 3.92 |
| 08-09 | 30014 - WAVE RESORT F & LONG BRANCH NJ 00B 29236 030014 | 3.73 | 08-16 | 28384 - MCDONALD'S F6713 LONG BRANCH NJ 1 028384 | 3.92 |
| 08-09 | 42457 - MCDONALD'S F6713 LONG BRANCH NJ 1 042457 | 3.92 | 08-16 | 30011 - WAVE RESORT F & LONG BRANCH NJ 00B 29236 030011 | 4.73 |
| 08-09 | 30247 - WAVE RESORT F & LONG BRANCH NJ 00B 29236 030247 | 5.80 | 08-16 | 30017 - WAVE RESORT F & LONG BRANCH NJ 00B 29236 030017 | 4.73 |
| 08-09 | 242573 - STARBUCKS 800 78 SEATTLE WA 002 122108242573 | 5.86 | | | |

For the period 07-31-2021 to 08-31-2021

DEAN R MON

## Advantage Chk I I I Account                    Account number: ___2794

### Withdrawals and Other Debits (cont.)

| Date | Description | Amount | Date | Description | Amount |
|------|-------------|--------|------|-------------|--------|
| 08-16 | 645901 - THE HOME DEPOT # PINE BROOK NJ 06136060 1227310012 | 10.64 | 08-23 | 89641 - SIRENA 732-2221119 NJ 79458559 089641 | 32.00 |
| 08-16 | 460928 - ACME 1582 BOONTON NJ 46247793 460928 | 23.83 | 08-23 | 15257 - WEGMANS #009 OCEAN NJ 00988 088419 | 49.21 |
| 08-16 | 25580 - CAMPBELLS PHARMA SEA GIRT NJ 58625580 025580 | 45.00 | 08-23 | 46730 - THEPOURHOUSE SHREWSBURY NJ 78154388 046730 | 49.86 |
| 08-16 | 88659 - THEPOURHOUSE SHREWSBURY NJ 78154388 088659 | 49.27 | 08-23 | 24222 - WHITE DOVE CLEAN TINTON FALLS NJ 75276002 024222 | 75.10 |
| 08-16 | 16875 - FRATELLO'S RESTA SEA GIRT NJ 00000000 016875 | 52.00 | 08-24 | 6303 - MCDONALD'S F6713 LONG BRANCH NJ 1 006303 | 3.92 |
| 08-16 | 73035 - WHITE DOVE CLEAN TINTON FALLS NJ 75276002 073035 | 75.35 | 08-24 | 30011 - WAVE RESORT F & LONG BRANCH NJ 00B29236 030011 | 5.53 |
| 08-16 | 50882 - EXTRA SPACE 0769 732-5444880 NJ 73205153 050882 | 301.86 | 08-24 | 73242 - PHILLIPS 66 - WA WALL NJ 21 073242 | 29.08 |
| 08-17 | 115456 - ACME 0780 WALL TOWNSHIP NJ 46242151 115456 | 18.06 | 08-25 | 30031 - WAVE RESORT F & LONG BRANCH NJ 00B29236 030031 | 5.53 |
| 08-17 | 440227 - STARBUCKS 800 78 SEATTLE WA 002 122910440227 | 30.00 | 08-25 | 47256 - THEPOURHOUSE SHREWSBURY NJ 78154388 047256 | 44.39 |
| 08-17 | 26294 - THE HOME DEPOT # PINE BROOK NJ 00000000 026294 | 50.00 | 08-25 | 67644 - THEPOURHOUSE SHREWSBURY NJ 78154388 067644 | 56.65 |
| 08-17 | 02-0562-H9236 TOYOTA Pay TFS | 1,526.00 | 08-26 | 272073 - SUNOCO 036830420 SECAUCUS NJ 65218804 272073 | 12.27 |
| 08-18 | 97033 - STARBUCKS STORE SHREWSBURY NJ 00000000 097033 | 30.00 | 08-26 | 187888 - STARBUCKS 800 78 SEATTLE WA 002 123809187888 | 30.00 |
| 08-18 | 39457 - SPRINT WIRELESS 800-639-6111 KS 00000000 039457 | 267.72 | 08-26 | 56362 - TST* HARPOON WIL MANASQUAN NJ 82056362 056362 | 46.92 |
| 08-19 | 59467 - THEPOURHOUSE SHREWSBURY NJ 78154388 059467 | 51.87 | 08-26 | 4854 - AMBOY BANK REDBANK NJ NJ000567 004854 | 100.00 |
| 08-19 | 4786 - AMBOY BANK REDBANK NJ NJ000567 004786 | 60.00 | 08-27 | 80069 - WNY NJ PARKING U WEST NEW YORK NJ 00344179 080069 | 1.50 |
| 08-19 | 94688 - THEPOURHOUSE SHREWSBURY NJ 78154388 094688 | 65.61 | 08-27 | 75868 - DELTA NORTH BERG NORTH BERGEN NJ 002 075868 | 33.82 |
| 08-19 | 92012 - WINE OUTLET WALL WALL TOWNSHIP NJ 59623555 092012 | 96.04 | 08-27 | 141525 - ACME 0780 WALL TOWNSHIP NJ 46242193 141525 | 40.65 |
| 08-20 | 66604 - FRATELLO'S RESTA SEA GIRT NJ 00000000 066604 | 10.75 | 08-30 | 210918 - BANK OF AMERICA WALL TOWNSHIP NJ INJH6032 210918 | 83.00 |
| 08-20 | 70031 - CJM CLOONES TINTONFALLS NJ 79532522 070031 | 16.00 | 08-30 | 35753 - MCDONALD'S F6713 LONG BRANCH NJ 1 035753 | 3.92 |
| 08-20 | 95900 - THEPOURHOUSE SHREWSBURY NJ 78154388 095900 | 43.45 | 08-30 | 30010 - WAVE RESORT F & LONG BRANCH NJ 00B29236 030010 | 4.73 |
| 08-23 | 30012 - WAVE RESORT F & LONG BRANCH NJ 00B29236 030012 | 5.80 | 08-30 | 705594 - SHOPRITE W LONGB WEST LONG BRA NJ 001 705594 | 7.28 |
| 08-23 | 562334 - Speedway 2630 Hi Manasquan NJ 99999999 562334 | 22.03 | 08-30 | 39513 - FRATELLO'S RESTA SEA GIRT NJ 00000000 039513 | 15.75 |
| 08-23 | 68504 - CAMPBELLS PHARMA SEA GIRT NJ 62068504 068504 | 30.19 | | | |

For the period 07-31-2021 to 08-31-2021

DEAN R MON

## Advantage Chk I I I Account                    Account number: 2794

### Withdrawals and Other Debits (cont.)

| Date | Description | Amount | Date | Description | Amount |
|------|-------------|--------|------|-------------|--------|
| 08-30 | 57893 - FRA TELLO'S RESTA SEA GIRT NJ 00000000 057893 | 25.00 | 08-30 | 94577 - FRA TELLO'S RESTA SEA GIRT NJ 00000000 094577 | 57.70 |
| 08-30 | 0503 - WINE OUTLET WALL WALL TOWN SHIP NJ 59623555 000503 | 31.98 | 08-30 | 30283 - NJ EZPA SS 888-288-6865 NJ 00000000 030283 | 108.25 |
| 08-30 | 82201 - H2O CEA N RESTA URA 973-9849594 NJ 75961403 082201 | 40.00 | 08-31 | 38087 - KWIK M ART TINTON FALLS NJ 04820549 124323000473 | 12.30 |
| 08-30 | 51518 - THEPOURHOUSE SHREWSBURY NJ 78154388 051518 | 45.99 | 08-31 | 23884 - TST* HARPOON WIL M ANASQUAN NJ 72523884 023884 | 47.53 |
| 08-30 | 9817 - THEPOURHOUSE SHREWSBURY NJ 78154388 009817 | 55.08 | 08-31 | SERVICE CHARGE | 2.00 |

DEAN R MON
DEBTOR IN POSSESSION
348 OCEAN BLVD APT 306
LONG BRANCH NJ 07740

109

August 25 21

Pay to the
Order of    D. R. Mon Group, Inc    | $ 12,000.00

Twelve thousand & 00/xx — Dollars

AMBOY
Bank

For    Operating Expenses

:279-4:  0109

109    $12,000.00    8/26/2021

## EXHIBIT C – EXECUTORY CONTRACTS TO BE ASSUMED

| Party | Description | Cure Cost |
|-------|-------------|-----------|
| Ray Catena of Monmouth Co | Lease of Lexus ES300h | $0.00 |

**EXHIBIT D - Cash on hand on the Effective Date**

Cash on hand on the Effective Date:                     $185,949[5]

Less –

      Amount of Administrative Expenses
      payable on effective date of Plan            $150,000

      Amount of statutory costs and charges         $0.00

      Amount of cure payments for executory contracts  $0.00

            Balance after paying these amounts……..   $35,949

The sources of the cash the Debtor will have on hand by the Effective Date are estimated as follows:

| | |
|---|---|
| $185,949 | Cash in the Debtor's bank account now |
| + 0 | Additional cash Debtor will accumulate from net earnings between now and Effective Date [state the basis for such projections] |
| + 0 | Borrowing [state separately terms of repayment] |
| + 0 | Capital Contributions |
| + 0 | Other |
| $185,949 | Total [This number should match "cash on hand" figure noted above] |

---

[5] As of the September 2021 Operating Report.

4876-0115-3538, v. 1

**EXHIBIT E - Liquidation Analysis**
[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]

*Debtor's Estimated Liquidation Value of Assets[1]*

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $185,949[2] |
| b. | Accounts receivable | $111,181.75[3] |
| c. | Inventory | $n/a |
| d. | Office furniture & equipment | $n/a |
| e. | Machinery & equipment | $n/a |
| f. | Automobiles | $9,000[4] |
| g. | Court Approved Loan | $9,431.43 |
| h. | Building & Land | |
| | i.  175 West 7th Urban Renewal LLC (70%) | $100,848.50[5] |
| | ii.  D.R. Mon Group, Inc. (100%) | $0.00 |
| | iii.  Jaclyn 40, LLC (75%)[6] | $0.00 |
| | iv.  Liberty Park at Union City, LLC (50%) | $535,757[7] |
| | v.  MJM Real Estate (100%) | $0.00 |
| | vi.  Mon Group Properties, Inc. (100%) | $0.00 |
| i. | Customer list | $n/a |
| j. | Investment property (such as stocks, bonds or other financial assets) | $11,960[8] |

---

[1] This Liquidation Analysis is for demonstration purposes only and should not be relied on by any party.

[2] As of the September 2021 Operating Report.

[3] Loan receivable due from 175 West due to the Debtor as of 10/28/21. The collectability of this loan is unknown. Pursuant to State Court Order entered on May 28, 2021, all net proceeds after payment of third-party debt shall be held in escrow. Claims between the Debtor, WLL 175 West No.1 LLC and WLL 175 West No.2 LLC shall be determined in the ligation pending before the Bankruptcy Court at Case No. 21-01360 (KCF). Without making any admissions, the Debtor has reduced this amount by 50% based on the costs of litigation and time to resolve this claim in the adversary proceeding.

[4] The Debtor disclosed two vehicles in his petition. The first, a Lexus ES300h, is leased, and, therefore, has no value.

[5] This amount is an estimation based on the current liens and other claims against 175 West. This amount is subject to claims by Bruce Epstein which are pending before the Bankruptcy Court at Case No. 21-01360 (KCF). Without making any admissions, the Debtor has reduced this amount by 50% based on the costs of litigation and time to resolve this claim in the adversary proceeding.

[6] All of the assets of Jaclyn 40 were sold prepetition as disclosed in the First Day Declaration.

[7] This amount is Mr. Mon's equity interest in Liberty Park which is being maintained in Trenk Isabel P.C.'s trust account.

[8] The Debtor's E*Trade Account.

k.  Lawsuits or other claims against third-parties        $55,000[9]
l.  Other intangibles (such as avoiding powers actions)   $n/a

   ***Total Assets at Liquidation Value***                $1,009,696.25

**Less:**
Secured creditors' recoveries                             $200,000[10]
**Less:**
Chapter 7 trustee fees and expenses                       $150,000[11]
**Less:**
Chapter 11 Administrative Expenses                        $150,000
**Less:**
Priority claims, excluding Administrative Expense claims  $465,000[12]

   (1) Balance for unsecured claims                        $44,696.25

   (2) Total dollar amount of unsecured claims             $2,883,197.41[13]

   ***Percentage of Claims Which Unsecured Creditors Will***
   ***Receive or Retain under the Plan:***                *1.5*%[14]

---

[9] If any proceeds become available to the estate, these monies shall be used to satisfy any priority or administrative obligations.  To the extent additional funds are available, they shall be distributed pro rata to Class 4 unsecured creditors.

[10] Potential claim based upon UCC-1 filed against Debtor's interest in 175 West.

[11] Includes costs to prosecute the claims against the WLL Entities and preference actions.

[12] In February 2020, Jaclyn 40 LLC's assets were conveyed.  The final tax returns have not been filed, but the accountants estimate that the Debtor will have a substantial capital gains tax liability based upon his 75% interest in Jaclyn 40 LLC.  The Debtor also incurred significant gains as a result of the sale of his primary residence in Sea Girt, New Jersey.  This is an estimate subject to further review and analysis.

[13] Excludes claims that were: (i) scheduled as contingent, unliquidated or disputed; and/or (ii) expunged or reduced by order of the Court.

[14] Based upon assets set forth above.